[Crim. No. 7923. Second Dist., Div. Two. Sept. 20, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ALBERTO GONZALES BARQUERA, Defendant and Appellant.*

---

*In his notice of appeal prepared in propria persona, appellant identifies himself as Alberto G. Barquera, *Jr*.

Chandler & Duncan for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of the possession of heroin. It was also found that he had suffered a prior narcotics conviction for which he had served a term in the state prison. He has appealed.

Officer Virgin of the Los Angeles Police Department, Narcotics Bureau, arrested defendant at approximately 9:30 p. m. on January 3, 1961. The officer had been investigating defendant for quite some time. He had stopped defendant on three or four occasions for questioning during that period and, with defendant's consent, had searched him on these occasions. During this investigation the officer had observed defendant in company with numerous persons connected with the narcotics traffic. Two of them were under indictment for narcotic sales and another was on parole for a narcotics offense.

The officer had also received a letter from the El Paso, Texas, Police Department which requested information concerning defendant and revealed that defendant was engaged in the narcotic traffic between El Paso and Los Angeles. The El Paso Police requested information concerning a café which defendant was believed to have owned. The letter also gave a license number for a motor vehicle that defendant owned. The officer observed defendant in the motor vehicle that was described in the letter.

Prior to arresting defendant, the officer examined the local police records and discovered that defendant had suffered two prior narcotic convictions.

On January 3, 1961, Officer Virgin observed defendant's car parked in the vicinity of Ord and New High Streets in Los Angeles. The officer drove around the block and observed defendant talking to a person who had a prior conviction and who, in the officer's belief, was a narcotic pusher.

Defendant conversed with this person for approximately 10 minutes, returned to his automobile and drove to 5444 Huntington Drive where he parked it in the rear. Upon leaving the car he went to a storeroom under the house next door. Officer Virgin observed defendant put his hand, head and shoulders into the storeroom. After a few minutes defendant went into his own house where he remained for some 15 minutes, after which he emerged and again went to the storeroom. With respect to defendant's movements in going to the storeroom, then to his house and back to the storeroom, the officer testified that upon each of these occasions it was his opinion, based upon his experience as a narcotics officer, that defendant was either picking up a stash of narcotics or putting a stash down.

While defendant was in the immediate vicinity of the storeroom, Officer Virgin's partner approached defendant from one direction while Virgin approached from another. Virgin's partner said, ''Nolo [defendant's nickname], police officers. I want to talk to you.'' Defendant thereupon ''threw something toward his mouth, and as he did this two objects fell to the ground directly at his feet. One rolled one way, and one rolled the other way. Defendant then turned and ran. As he ran, he tripped and fell on some stairs,'' and both officers seized him. Officer Virgin picked up the fallen objects which were balloons, each of which contained heroin. Officer Virgin's partner thought that defendant had thrown something into his mouth. He thereupon attempted to extract same from defendant's mouth but did not find anything in it. Defendant was arrested. He stated that ''this [apparently referring to the contents of the balloons] was all of the stuff he had, and that he did not swallow any.'' The officers did not have either a search warrant or a warrant for his arrest.

At the trial defendant testified that the officers had ''jumped'' him and had gotten an armhold on his neck. He further stated that he had two balloons containing heroin in his mouth at the time and that the officers, after a struggle, removed them with their fingers.

Defendant objected to the introduction of the exhibits seized at the time of the arrest upon the ground that they were the product of an illegal search and seizure. This objection was overruled and the evidence admitted.

On appeal defendant contends there was no probable cause for the officers to stop him and that the search was illegal; hence the evidence was inadmissible. We find no merit in defendant's position. It will be recalled that the arrest occurred at approximately 9:30 p. m. in the winter season, that the officers called to the defendant identifying themselves as police officers and stating they wanted to talk to him. It has been consistently held that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of the officer's duties. (*People* v. *Ellsworth,* 190 Cal.App.2d 844, 846 [12 Cal. Rptr. 433], and cases there cited.)

 Here the circumstances were such, considering defendant's associations, his prior convictions for narcotics violations, the letter from the El Paso Police Department, the observations of the officers just prior to the arrest, and the expert knowledge of the officers enabling them to interpret these observations, that the officers would have been derelict in their duty had they neglected to attempt to question defendant. Actually, the facts and circumstances known to the officers prior to their attempt to interview defendant would seem to be sufficient to ''lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion'' that defendant was guilty of a crime. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) In addition, when the officers identified themselves, stating that they wanted to talk to him, defendant appeared to throw something in his mouth and began to run, dropping two objects to the ground as he attempted to make his getaway. This attempted flight added to the other circumstances previously noted was plainly adequate to establish probable cause for a lawful arrest. (*People* v. *Taylor,* 174 Cal.App.2d 448, 451 [344 P.2d 837]; *People* v. *Cisneros,* 166 Cal.App.2d 100, 102 [332 P.2d 376]; *People* v. *Dewson,* 150 Cal.App.2d 119 [310 P.2d 162].) It therefore follows the questioned evidence was properly admitted.

In an effort to establish an illegal search and seizure of the contraband, defendant testified he had the two balloons containing heroin in his mouth; that after a struggle one of

the officers "put his two fingers" in defendant's mouth and removed the two balloons therefrom. Officer Virgin testified they did not recover anything from defendant's mouth; that he observed defendant's throwing motion toward his mouth, and saw two objects fall to the ground directly at defendant's feet; that he retrieved these two objects which were balloons that contained a white powder that proved to be heroin. It is apparent that the trial judge disbelieved defendant's story and accepted the testimony of the officer as giving the correct version as to how the contraband was recovered. This was, of course, within the province of the trial court and is binding on appeal. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].)

Defendant had a fair trial. We find no basis for reversing the judgment of conviction.

Affirmed.

Ashburn, J., and Herndon, J., concurred.